IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**
July 10, 2023 04:57 PM
SX-2021-CR-00199
**TAMARA CHARLES**
**CLERK OF THE COURT**



## SUPERIOR COURT OF THE VIRGIN ISLANDS

## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| PEOPLE OF THE VIRGIN ISLANDS, | | |
| | PLAINTIFF, | SX-2021-CR-198 |
| v. | | |
| FADE ASAD, | | |
| | DEFENDANT. | |
| PEOPLE OF THE VIRGIN ISLANDS, | | |
| | PLAINTIFF, | SX-2021-CR-199 |
| v. | | |
| DARNLEY PETERSON,[1] | | |
| | DEFENDANT. | CITE AS: 2023 VI SUPER 37U |

**Appearances:**

Amie M. Simpson, Esq.
Virgin Islands Department of Justice
St. Croix, U.S. Virgin Islands
*For People of the Virgin Islands*

Martial A. Webster, Sr., Esq.
Law Office of Martial A. Webster, Sr.
St. Croix, U.S. Virgin Islands
*For Fade Asad*

Ronald Russell, Esq.
The Russell Law Firm LLP
St. Croix, U.S. Virgin Islands
*For Darnely Peterson*

## MEMORANDUM OPINION AND ORDER

**WILLOCKS, Administrative Judge**

---

[1] There is a discrepancy between the spelling of Defendant Darnely Peterson's last name in the information and in his filings—to wit, the information spelled it as "Peterson" while his filings spelled it as "Petersen." The Court will use the spelling used in the information since that is the initiating document and the spelling of the name therein was never amended.

*People of the V.I. v. Asad, People of the V.I. v. Peterson*
SX-2021-CR-198, SX-2021-CR-199
**Memorandum Opinion and Order**
Page 2 of 21

2023 VI SUPER 37U

¶ 1    **THIS MATTER** came before the Court on (i) Defendant Fade Asad's (hereinafter "Asad") motion to suppress, filed on July 21, 2022, in criminal case number SX-2021-CR-198, which was joined by Defendant Darnely Peterson (hereinafter "Peterson") in criminal case number SX-2021-CR-199, and (ii) Peterson's motion to suppress, filed on September 18, 2022, in criminal case number SX-2021-CR-199.

## BACKGROUND

¶ 2    On September 13, 2019, the People of the Virgin Islands (hereinafter "People") filed a joint information against Asad in criminal case number SX-2021-CR-198 and Peterson in criminal case number SX-2021-CR-199, based on the events that allegedly took place on or about August 28, 2021 as set forth in the affidavit of Police Officer Dwayne E. Walters (hereinafter "Officer Walters"), dated September 13, 2021 (hereinafter "Walters Affidavit"). The information charged both Asad and Peterson with the following counts:

> Count One. FADE ASAD, when not authorized by law, did have, possess, bear, transport, or carry either actually or constructively, open or concealed, a firearm, to wit: a black Glock 23 .40 caliber bearing serial number #BGHA928, in violation of Title 14 V.I.C. § 2253(a). (UNAUTHORIZED POSSESSION OF A FIREARM)

> Count Two. FADE ASAD, when not authorized by law, possessed firearm ammunition, to wit: multiple .40 caliber live rounds, in violation of Title 14 V.I.C. § 2256(a). (POSSESSION OF AMMUNITION)

> Count Three. DARNLEY PETERSON, when not authorized by law, did have, possess, bear, transport, or carry either actually or constructively, open or concealed, a firearm to wit: a black Glock 23 .40 caliber bearing serial number #BGHA928, in violation of Title 14 V.I.C. § 2253(a). (UNAUTHORIZED POSSESSION OF A FIREARM)

> Count Four. DARNLEY PETERSON, when not authorized by law, did have, possess, bear, transport, or carry either actually or constructively, open or concealed, a firearm, to wit: a black Glock 23 .40 caliber bearing serial number #BGHA928, in a 4-door Grey Nissan Altima with no license plate number, in violation of Title 14 V.I.C. § 2253(e). (UNAUTHORIZED POSSESSION OF A FIREARM IN A VEHICLE)

*People of the V.I. v. Asad, People of the V.I. v. Peterson*
SX-2021-CR-198, SX-2021-CR-199
**Memorandum Opinion and Order**
Page 3 of 21

2023 VI SUPER 37U

<u>Count Five</u>. DARNLEY PETERSON, when not authorized by law, possessed firearm ammunition, to wit: multiple .40 caliber live rounds, in violation of Title 14 V.I.C. § 2256(a). (POSSESSION OF AMMUNITION)

(Information.)

¶ 3     A copy of Officer Walters' Affidavit was filed with the information. In his affidavit, Officer Walters stated in relevant part: (i) on August 28, 2021, Police Officer Jon Modeste (hereinafter "Officer Modeste") and Police Officer Robin Richards (hereinafter "Officer Richards") were on mobile patrol in a marked police vehicle; (ii) at around 10:28 p.m., Officer Modeste and Officer Richards observed a four-door grey Nissan Altima without a rear license plate leaving a parking space near the Napoleon's Pizza in Peter's Rest on St. Croix; (iii) at that time, Officer Walters was also on mobile patrol near the Napoleon's Pizza in Peter's Rest on St. Croix; (iv) Officer Modeste and Officer Richards then conducted a traffic stop of said vehicle in the parking lot of Napoleon's Pizza; (v) during the traffic stop, Officer Walters was positioned by the driver side of the vehicle while Officer Modeste and Officer Richards were positioned by the passenger side of the vehicle; (vi) Officer Walters observed the front passenger, later identified as Peterson, begin to exit the vehicle; (vii) "based on information and belief, while Mr. Petersen was trying to get out of the vehicle, [Officer Richards] observed what appeared to be the handle of a gun with an extended magazine protruding from an open brown in color backpack-style bag that was located on the floorboard of the vehicle;" (viii) about that same time, Officer Walters asked the driver, later identified as Asad, to produce his driver's license, vehicle registration, and proof of insurance; (ix) Asad was only able to able provide Officer Walters with the insurance card for his vehicle; (x) while Officer Walters was still standing by the driver side, Officer Modeste came around the vehicle and advised Officer Walters that Officer Richards observed what appeared to be a firearm in a brown bag on the floorboard of the passenger side of the vehicle; (xi) Officer

Walters then ordered Asad to exit the vehicle; (xii) Officer Walters and Officer Richards then commanded Asad and Peterson to lay on the ground; (xiii) Asad and Peterson were then advised of the officers' findings and Officer Walters asked them "who does the firearm belong to?"; (xiv) both Asad and Peterson replied that "it doesn't belong to us;" (xv) Asad and Peterson were then asked if either of them had a license to possess the firearm that was in the car and they both replied "no;" (xvi) Asad and Peterson were then placed in handcuffs and patted down before being placed in the patrol unit; (xvii) Forensic Technician Makima Wilkinson (hereinafter "Officer Wilkinson") and Forensic Technician Elyce Fleming came to the scene to process the vehicle and collect the firearm; (xviii) Officer Wilkinson recovered the following from the vehicle: a firearm that was a black Glock 23 .40 caliber, serial number BGHA928, which contained thirteen live .40 caliber rounds in the black magazine and one .40 caliber round in the chamber and a second black magazine that contained nine live .40 caliber rounds; and (xix) the Custodian of Records for the Firearm Bureau confirmed that neither Asad nor Peterson have a license to possess firearm in the U.S. Virgin Islands. (Walters Aff.)

¶ 4     On July 21, 2022, Asad filed a motion to suppress and a memorandum of law in support thereof in criminal case number SX-2021-CR-198.[2] On August 11, 2022, the People filed an opposition thereto.[3] After the People filed their opposition, on September 18, 2022, Peterson filed a joinder of Asad's motion to suppress and his own motion to suppress in criminal case number SX-2021-CR-199.

---

[2] Asad attached the following to his motion: Exhibit 1-The Walters Affidavit.

[3] The People attached the following to their opposition: Exhibit A-Photo of dark gray vehicle without a registration sticker affixed to the lower left corner of the windshield and without a front license plate affixed; and Exhibit B-Photo of the interior of the front passenger side of a vehicle and the contents contained therein.

*People of the V.I. v. Asad, People of the V.I. v. Peterson*
SX-2021-CR-198, SX-2021-CR-199
**Memorandum Opinion and Order**
Page 5 of 21

**2023 VI SUPER 37u**

¶ 5    On September 23, 2022, this matter came before the Court for a suppression hearing. At the end of the suppression hearing, the Court ordered the parties to file supplemental briefing on certain issues that were raised for the first time at the hearing; the Court ordered the People to file their brief by September 30, 2022 and the defendants to file their briefs by October 7, 2022.

¶ 6    On October 3, 2022, the People filed their supplemental brief. On October 7, 2022, Asad filed his supplemental brief. On October 11, 2022, Peterson filed his supplemental brief and a motion to allow late filing.

## STANDARD OF REVIEW

¶ 7    "The Fourth Amendment protects persons from 'unreasonable searches and seizures.'"[4] *People of the V.I. v. Looby*, 68 V.I. 683, 694 (V.I. 2016). To conduct a valid search under the Fourth Amendment, generally a judge or magistrate "must issue a warrant upon a finding of probable cause that describes, with particularity, both the place to be searched and the persons or things to be seized." *Id.* Searches conducted "without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Id.* (internal quotations omitted). Furthermore, as to seizures, the Fourth Amendment "applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *Blyden v. People of the V.I.*, 53 V.I. 637, 647 (V.I. 2010) (citing *Brown v. Texas*, 443 U.S. 47, 50 (1979) (internal quotations omitted)).

---

[4] "The Fourth Amendment is applicable in the Virgin Islands pursuant to § 3 of the Revised Organic Act of 1954." *People of the V.I. v. Glasford*, 2022 V.I. LEXIS 40, at *10 (V.I. Super. Ct. Apr. 19, 2022) (citing *People of the V.I. v. Armstrong*, 64 V.I. 528, 530 n.1 (V.I. 2016) (citing Revised Organic Act of 1954, § 3; 48 U.S.C. § 1561, *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 87-88 (1995 & Supp. 2013) (preceding V.I. CODE ANN. tit. 1)).

*People of the V.I. v. Asad, People of the V.I. v. Peterson*
SX-2021-CR-198, SX-2021-CR-199
**Memorandum Opinion and Order**
Page 6 of 21

2023 VI SUPER 37ʋ

¶ 8    "Although the burden of proving that a search or seizure was unlawful normally rests with the defendant, when the police conduct a search or seizure without a warrant, the burden shifts to the government to prove exigent circumstances or another exception to the warrant requirement." *Nicholas v. People of the V.I.*, 56 V.I. 718, 738 (V.I. 2012) (citations omitted); *see Armstrong*, 64 V.I. at 537 ("Although ordinarily it is the defendant who bears the burden of proving that evidence should be suppressed, this is not the case if a defendant has moved to suppress evidence on grounds that it was obtained without a warrant in violation of the Fourth Amendment. In such cases, although it is the defendant who has made the motion, it is the prosecution that bears the burden of proving that the warrantless search was reasonable."). Any evidence derived from a Fourth Amendment violation must be excluded from trial as "fruit of the poisonous tree." *Blyden*, 53 V.I. at 650 (citing *Wong v. U.S.*, 371 U.S. 471, 488 (1963)).

## DISCUSSION

¶ 9    In his motion, Asad argued that "any evidence seized and statements made by defendant" should be suppressed because the officers "articulated no reason establishing probable cause to seize the defendant, the vehicle, or the contents of the vehicle" and they "failed to articulate even a reasonable suspicion to search the vehicle of the defendant." (Brief 6-7.) Asad made the following assertions in support of his argument: (i) "Law enforcement did not articulate any factual basis for the seizure of defendant or his vehicle." (Id., at 5); (ii) "The officers were not able to see from the front of the vehicle that the vehicle did not have a license plate in the back of the vehicle, which the officers articulate for their reason for stopping defendant's vehicle." (Id.); (iii) Officer Walters "did not set forth any facts where he observed anything to lead law enforcement to believe that defendant committed an offense or was about to commit an offense," and therefore, the

*People of the V.I. v. Asad, People of the V.I. v. Peterson*
SX-2021-CR-198, SX-2021-CR-199
**Memorandum Opinion and Order**
Page 7 of 21

2023 VI SUPER 37U

Walters Affidavit did "not set forth any observation of a traffic violation to justify the stop." (Id.); (iv) "Absent an observation by the Officer of a traffic or regulatory violation, a traffic stop is unreasonable under the Fourth Amendment."[5] (Id.); (v) "The search and seizure of defendant was unlawful" because "[t]he stop was not supported by reasonable suspicion 'that criminal activity [was] afoot.'"[6] (Id., at 6); (vi) "The Third Circuit has stated that it is not a crime to possess a firearm in the Virgin Islands-even in public."[7] (Id.); (viii) The Walters Affidavit "failed to establish probable cause for the issuance of a search warrant."[8] (Id., at 6); (ix) Asad contested Officer Walter's account of the facts in the Walters Affidavit. (Id.); and (x) Asad did not consent to the search of his vehicle or person. (Id.)

¶ 10    In their opposition, the People argued the Court should deny Asad's motion to suppress because "the seizure of evidence in this matter was not in violation of the Fourth Amendment." (Opp. 2.) The People made the following assertions in support of their argument: (i) The initial stop of the vehicle driven by Asad was justified because the vehicle "had no license plate visible on the front…and also had no registration sticker…and [Asad] was unable to produce any proof of registration." (Id.); (ii) "The officers clearly had probable cause, in the form of visual proof, to believe the vehicle was being driven in violation of 20 V.I.C. § 334(a)[,]" which requires that "[o]ne plate must be affixed to the front of the body of the vehicle and the other to the rear, and both plates must be clearly visible from the front and rear of the vehicle." (Id.); (iii) "Traffic

---

[5] Asad referenced: *When v. United States*, 519 U.S. 408 (1997) (traffic stop justified if there is objective circumstances which justify an otherwise pretextual stop); *Delaware v. Prouse*, 440 U.S. 648, 653 (1979).

[6] Asad referenced: *Terry v. Ohio*, 392 U.S. 1 (1968).

[7] Asad referenced: *United States v. Ubiles*, 224 F. 3d 213 (3d Cir. 2000).

[8] Asad referenced: *Wong Sun v. United States*, 37 U.S. 471, 484 (1963).

*People of the V.I. v. Asad, People of the V.I. v. Peterson*
SX-2021-CR-198, SX-2021-CR-199
**Memorandum Opinion and Order**
Page 8 of 21

2023 VI SUPER 37u

violations create reasonable suspicion sufficient for an initial *Terry* stop."[9] (Id.); (iv) "Officers, in fact, are encouraged by the courts to enforce the traffic laws."[10] (Id.); (v) Officer Modeste's observation that [Asad's] vehicle was missing a front license plate was sufficient to give him reasonable suspicion of a traffic violation, and thus to stop [Asad's] vehicle." (Id.); and (vi) "[T]he officers were legally in a position to see, when Mr. Peterson stepped out of the stopped vehicle, the butt of the firearm in plain view." (Id.)

¶ 11   In his motion, Peterson reiterated the argument and assertions in Asad's motion. Peterson also contested Officer Walter's account of the facts in the Walters Affidavit and asserted that he did not consent to the search. (Motion.)

¶ 12   At the September 23, 2022 suppression hearing, the People presented Officer Wilkinson and Officer Walters as the People's witnesses and neither defendant presented any witnesses. Officer Wilkinson appeared personally at the suppression hearing and testified, inter alia, that she was not present at the initial stop, that she only arrived at the scene later to process the vehicle and the firearm, that she took the photos attached to the People's opposition,[11] and that said photos were true and accurate depictions. Officer Walters appeared via video conference at the suppression hearing and testified, inter alia, that he observed the vehicle driven by Asad was missing the registration sticker and that he initiated the traffic stop of the said vehicle. Thus, the People argued that the initial stop of the vehicle was justified because the officers had reasonable suspicion of traffic violations. In response, the defendants argued for the first time that the initial

---

[9] The People referenced: *People of the V.I. v. Samuel*, 2010 V.I. LEXIS 80, at *9 (V.I. Super. Ct. Nov. 12, 2010); *People of the V.I. v. Hodge*, 2016 V.I. LEXIS 123 (V.I. Super. Ct. Aug. 24, 2016); *U.S. v. Johnson*, 63 F.3d 242, 246 (3d Cir. 1995).

[10] The People referenced: *Delaware v. Prouse*, 440 U.S. 648, 659 (1979).

[11] *See supra*, footnote 3. These photos were also presented at the suppression hearing and were admitted into evidence.

*People of the V.I. v. Asad, People of the V.I. v. Peterson*
SX-2021-CR-198, SX-2021-CR-199
**Memorandum Opinion and Order**
Page 9 of 21

2023 VI SUPER 37u

stop occurred on private property—Napoleon's Pizza's parking lot—and not on public roads, and therefore, there were no traffic violations since the statutes requiring registration sticker and license plates are only applicable to vehicles operating on the public road. The People conceded the initial stop occurred on private property, but argued that the vehicle was about to head onto public roads and thus the officers stopped the vehicle in anticipation of a crime. Furthermore, issues regarding the plain view of the item that appeared to be a firearm on the floorboard of the vehicle were also raised for the first time. The People responded that neither motion addressed the issues regarding the plain view of the item that appeared to be a firearm, and that the People were only prepared to argue issues raised in the defendants' motions. The defendants responded that, by filing their motions to suppress, they raised every constitutional issue. The Court granted the parties leave to file supplemental briefs regarding the issues raised as to: (i) the fact that the initial stop occurred on private property and (ii) the plain view of the item that appeared to be a firearm.

¶ 13    In their supplemental brief,[12] the People reiterated their argument that the initial stop of the vehicle driven by Asad was justified because the officers had reasonable suspicion of traffic violations—to wit, "there was no license plate on the vehicle."[13] (People Supp. Brief 1-2.) The People also argued that the fact the initial stop occurred in Napoleon's Pizza's parking lot is of no issue because under Title 20 V.I.C. § 101, "public road or highway" includes all roads, highway

---

[12] The Court will *sua sponte* extend the deadline for the People to file their supplemental brief and accept the People's supplemental brief. Going forward, the People are reminded to comply with the deadlines set forth by the Court, and that if additional time is needed, the People are reminded to file a motion for an extension of deadline prior to the expiration of the deadline.

[13] The People referenced: Title 20 V.I.C. § 334(a) ("One plate must be affixed to the front of the body of the vehicle and the other to the rear, and both plates must be clearly visible from the front and rear of the vehicle."); Title 20 V.I.C. § 331 ("Except as provided in this chapter, no motor vehicle, bicycle, or trailer shall be operated upon the public highways of the Virgin Islands unless—(1) it has been registered by the Director of Motor Vehicles; (2) a registration license has been issued therefor; and (3) it is equipped with license plate as required by this chapter.").

*People of the V.I. v. Asad, People of the V.I. v. Peterson*
SX-2021-CR-198, SX-2021-CR-199
**Memorandum Opinion and Order**
Page 10 of 21

2023 VI SUPER 37U

and parking areas open for use by the public" and that "[t]he parkin lot is, in fact, open for use by the public, and so the statutes regarding registration of vehicles and display of license plates would apply to the defendants' vehicle." (Id., at 2.) The People further argued that it was "both reasonable and prudent" to stop the vehicle at that juncture because the "[o]fficers have a duty to prevent a crime that they have probable cause to believe is about to occur." (Id.) Thus, the People concluded that the "[t]raffic violations create[d] reasonable suspicions sufficient for an initial *Terry* stop."[14] (Id.) As to the issue of the plain view of the item that appeared to be a firearm on the floorboard of the vehicle, the People argued that because "Officer Modeste's observation that [Asad's] vehicle was missing a front license plate was sufficient to give him reasonable suspicion of a traffic violation…to stop [Asad's] vehicle[,] [and] [a]s a result, the officers were legally in a position to see, when Mr. Peterson stepped out of the stopped vehicle, the butt of the firearm in plain view." (Id., 2-3.)

¶ 14    In his supplemental brief, Asad did not directly address the two issues identified by the Court at the suppression hearing but asserted the following in support of his motion to suppress: (i) "The parties concede that a search and seizure occurred on the day in question, but not necessarily who was searched and seized because the sole witness failed to identify defendants at the suppression hearing." (Asad Supp. Brief 3); (ii) "According to the People, the basis for the search and seizure of Defendant was the observation of the passenger, presumably Defendant Peterson, attempting to exit the vehicle with a bag that contained what appeared to be the handle of a firearm [but] [t]his observation was not made by the officer that testified during the

---

[14] The People referenced: *Samuel*, 2010 V.I. LEXIS 80, at *9; *Hodge*, 2016 LEXIS 123; *Johnson*, 63 F.3d at 246; *Prouse*, 440 U.S. at 659.

*People of the V.I. v. Asad, People of the V.I. v. Peterson*
SX-2021-CR-198, SX-2021-CR-199
**Memorandum Opinion and Order**
Page 11 of 21

2023 VI SUPER 37U

suppression hearing, but by another officer." (Id., at 4); (iii) "Here, the People based the stop on the lack of the license plate not being displayed at the front of the vehicle" but "[t]he public knew, and so should all law enforcement officers at the time, that the Bureau of Motor Vehicles was closed during the period of August 2021 due to the pandemic, and motorist were permitted to drive without tags during this period, as long as they got their vehicles inspected [and that] [a]fter inspection, motorists were to wait to be called to pick up their tags and registrations at much later dates, which could be months" and that "[t]he Court can take judicial of those facts." (Id., at 4-5) (iv) the officers "failed to articulate with particularity the basis for the search and seizure" because "[t]he observation of a handle of a gun in a bag carried by the passenger of the vehicle does not provide sufficient probable cause for Defendant's seizure and the search of his vehicle." (Id., at 5) (v) "The Third Circuit noted in *Ubiles*, it is not unlawful to possess in gun in a vehicle in the Virgin Islands." (Id.); (vi) "Neither…officer testify that Defendant and his passenger were known criminals or that the officers observed any other activity that would lead them to believe as Defendant posed a danger to anyone."[15] (Id.); and (vii) The People's supplemental brief should be stricken because it was filed after the deadline. (Id.)

¶ 15    In his supplemental brief,[16] Peterson also did not directly address the two issues identified by the Court at the suppression hearing but asserted the following in support of his motion to suppress: (i) "During the suppression hearing, none of the people's witnesses identified any of the defendants"—to wit, "Darnley Peters[o]n was never identified as the passenger" and "[t]he in-court testimony failed to identify any of the defendants - as to who operated the vehicle, was

---

[15] Asad referenced: *Arizona v. Gant*, 556 U.S. 332 (2009).

[16] The Court will grant Peterson's motion to allow to allow late filing and accept Peterson's supplemental brief.

*People of the V.I. v. Asad, People of the V.I. v. Peterson*
SX-2021-CR-198, SX-2021-CR-199
**Memorandum Opinion and Order**
Page 12 of 21

2023 VI SUPER 37U

stopped, seized, and searched." (Peterson Supp. Brief 2); and (ii) "The People state [sic] that the basis for the search and seizure was that an Officer observed Defendant Peterson attempting to exit the vehicle with a bag" [but] "[t]hat so called observation does not rise a reasonable suspicion from a reasonable person looking at the totality of the circumstances"—to wit, "[a] dark night, police driving in an unlit parking lot, and none of the witnesses providing any specifics, details, and relevant evidence regarding Defendant Peters[o]n." (Id., at 3.)

¶ 16    The Court must address at the outset the defense counsel's assertion at the hearing that, by filing the defendants' motions to suppress, they raised every constitutional issue despite not being raised or briefed. Under the defense counsel's logic, a defense counsel can file a motion to suppress simply stating that the defendant's Fourth Amendment rights were violated without any further briefing, and that would be sufficient to raise every constitutional issue. The Court disagrees. The Court—and the prosecutor—cannot be expected to read the minds of the defense counsel or independently conceive and prepare for every possible Fourth Amendment violation the defense counsel may have intended to raise. To follow the defense counsel's logic would promote gamesmanship by the defense counsel through allowing them to catch the People off guard with their arguments at the suppression hearing. The following examples illustrate how the People were prejudiced as result of the defense counsel's failure to properly brief all the issues they intended to raise in their motions to suppress. First, given that Asad and Peterson's counsel argued solely in their respective motions that the initial stop of vehicle was unlawful because the officers lacked reasonable suspicion and briefed this sole issue, the People's opposition only addressed the issue of the initial stop and the People only prepared to address this issue at the suppression hearing—to wit, the People called Officer Wilkinson and Officer Walters to testify as to the lawfulness of

*People of the V.I. v. Asad, People of the V.I. v. Peterson*
SX-2021-CR-198, SX-2021-CR-199
**Memorandum Opinion and Order**
Page 13 of 21

2023 VI SUPER 37u

the initial stop. However, issues as to the plain view of the item that appeared to be a firearm and the fact that the initial stop occurred on private property were raised for the first time at the suppression hearing. The People indicated that they were only prepared to argue issues raised in the defendants' motions and neither motion addressed these issues. Thus, the People were caught off guard by these newly raised issues and were not given the opportunity to prepare for arguments or arrange for the appropriate officer(s) to testify since neither Officer Wilkinson nor Officer Walters initially observed in plain view the item that appeared to be a firearm. Subsequently, Asad's counsel pointed out in Asad's supplemental brief that "[t]his observation [of handle of a firearm] was not made by the officer that testified during the suppression, but by another officer" to support his argument for the suppression of evidence. (Asad's Supp. Brief 4.) The People were clearly prejudiced by the defense counsel raising these arguments for the first time at the suppression hearing. Second, both Asad and Peterson's counsel pointed out in their respective supplemental briefs that no positive identifications of the defendants were made by the witnesses at the suppression hearing to support their arguments for the suppression of evidence. However, the defense counsel seemed to have overlooked the fact that prior to this point, Asad's identity as the driver of the vehicle and Peterson's identity as the passenger of the vehicle were never disputed by the defense counsel and these issues were raised for the first time in their respective supplemental briefs. Thus, the People were again caught off guard by these newly raised issues and were not given the opportunity to prepare for arguments or arrange for the appropriate officer(s) to make the in-court identifications since neither Officer Wilkinson nor Officer Walters may have been in the best position, either at the traffic stop or at the hearing, to make the in-court

*People of the V.I. v. Asad, People of the V.I. v. Peterson*
SX-2021-CR-198, SX-2021-CR-199
**Memorandum Opinion and Order**
Page 14 of 21

2023 VI SUPER 37 U

identifications.[17] The People were clearly prejudiced by the defense counsel raising these arguments for the first time in their supplemental briefs after the suppression hearing. Furthermore, in addition to possible gamesmanship by the defense counsel, "there is absolutely no basis for the proposition that attorneys are not required to fully brief all questions of law relevant to the issues that are being litigated." *Antilles Sch., Inc. v. Lembach*, 64 V.I. 400, 428 n.13 (V.I. 2016). "It is not the Court's job to research and construct legal arguments open to parties ... In order to develop a legal argument effectively, the facts at issue must be bolstered by relevant legal authority; a perfunctory and undeveloped assertion is inadequate." *V.I. Taxi Association v. West Indian Company, Limited*, 2016 V.I. LEXIS 170, *4 (Super. Ct. Oct. 18, 2016) (citing *Charles v. CBI Acquisitions, LLC*, 2016 V.I. LEXIS 62, *27 n. 66); *see Joseph v. Joseph*, 2015 V.I. LEXIS 43, *5 (Super. Ct. Apr. 23, 2015) (the Court will not make a movant's arguments for him when he has failed to do so); *cf. Howerton v. V.I. Office of the Lieutenant Governor*, 2022 V.I. Supreme LEXIS 24, at *7 (Sep. 7, 2022) ("Blatantly obvious in Appellant's petition was the lack of any legal analysis or support as to why this Court should find in its review that the Superior Court erred when it denied the Appellant petition for a writ of mandamus."). Defense counsel are reminded to properly brief all the issues they intend to raise in their motions.

¶ 17 To summarize, the defense counsel argued in the defendants' motions to suppress that the initial stop of vehicle was unlawful because the officers lacked reasonable suspicion, then at the suppression hearing, issues as to the plain view of the item that appeared to be a firearm and the fact that the initial stop occurred on private property were raised for the first time, and then

---

[17] Officer Wilkinson, who appeared personally at the suppression hearing, testified that she was not present at the initial stop and only arrived at the scene later to process the vehicle and the firearm. Officer Walters, while he testified that he was present at the initial stop, appeared via video conference at the suppression hearing.

*People of the V.I. v. Asad, People of the V.I. v. Peterson*
SX-2021-CR-198, SX-2021-CR-199
**Memorandum Opinion and Order**
Page 15 of 21

2023 VI SUPER 37U

following the suppression hearing, issues as to the lack of in-court identifications were raised for the first time.

¶ 18    Given that the defense counsel moved to suppress evidence on grounds that they were obtained without a warrant in violation of the Fourth Amendment, and it is not in dispute that they were obtained without a warrant, the People bears the burden to demonstrate that the seizure and search were permissible under an exception to the warrant requirement of the Fourth Amendment. *See Armstrong*, 64 V.I. at 537.

### 1.  The Initial Stop

¶ 19    "Although an officer is generally permitted to search a person or place only upon a finding of probable cause, the United States Supreme Court has determined that 'in appropriate circumstances the Fourth Amendment allows a properly limited 'search' or 'seizure' on facts that do not constitute probable cause to arrest or to search for contraband or evidence of crime." *Looby*, 68 V.I. at 694; *see Blyden*, 53 V.I. at 647 (quoting *Brown*, 443 U.S. at 50 (alteration in original) (internal quotations omitted). "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has seized that person, and the Fourth Amendment requires that the seizure be 'reasonable.'" *Blyden*, 53 V.I. at 647. In *Blyden*, the Virgin Islands Supreme Court pointed to the seminal case of *Terry v. Ohio*, 392 U.S. 1 (1968), as an example of such appropriate circumstances when a "a police officer may stop a suspect on the street and conduct a limited search, i.e. a frisk, of the suspect without probable cause." *Blyden*, 53 V.I. at 648; *see Looby*, 68 V.I. at 685. In *Terry*, the United States Supreme Court held that a "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently

*People of the V.I. v. Asad, People of the V.I. v. Peterson*
SX-2021-CR-198, SX-2021-CR-199
**Memorandum Opinion and Order**
Page 16 of 21

2023 VI SUPER 37U

dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him" and that "[s]uch a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken." 392 U.S. at 30-31. In *Rodriguez v. U.S.*, the United States Supreme Court held that "[a] seizure for a traffic violation justifies a police investigation of that violation" and explained that "'[a] relatively brief encounter,' a routine traffic stop is 'more analogous to a so-called '*Terry* stop' ... than to a formal arrest.'" 575 U.S. 348, 354 (2015) (citations omitted).

### A. Analysis

¶ 20    Through the testimony of Officer Wilkinson and the photos admitted, the People established: (i) on or about August 28, 2021, Officer Wilkinson arrived at the scene of the traffic stop to process the vehicle driven by Asad and the firearm found therein; and (ii) the vehicle did not have the registration sticker or the front license plate affixed. Through the testimony of Officer Walters, the People established: (i) on August 28, 2021, around 10:28 p.m., Officer Walters was on mobile patrol near Napoleon's Pizza, (ii) Officer Walters observed a vehicle, driven by Asad, in the parking lot of Napoleon's Pizza that did not have a registration sticker, (iii) at that time, Officer Walters initiated a traffic stop of the vehicle based on the missing registration sticker, (iv) there were 3-4 other officers at the traffic stop, (v) the traffic stop occurred on private property— to wit, in the parking lot of Napoleon's Pizza, (vi) during the traffic stop, Officer Walters was

*People of the V.I. v. Asad, People of the V.I. v. Peterson*
SX-2021-CR-198, SX-2021-CR-199
**Memorandum Opinion and Order**
Page 17 of 21

2023 VI SUPER 37μ

standing by the driver side of the vehicle and was mainly focused on the driver side of the vehicle, and (vii) during the traffic stop, other officers were standing by the passenger side of the vehicle.

¶ 21    In the Virgin Islands, the statutes mandate that "no motor vehicle… shall be operated upon the public highways of the Virgin Islands unless—(1) it has been registered by the Director of Motor Vehicles; (2) a registration license has been issued therefor; and (3) it is equipped with license plates as required by this chapter," Title 20 V.I.C. § 331, that "[l]icense plates and stickers (or tags) shall be securely attached in such a manner as to be clearly visible and to prevent swinging [and] [t]hey shall be maintained in a legible condition at all times," Title 20 V.I.C. § 334, and that "[w]hen two plates are issued, two plates shall be displayed [and] [o]ne plate must be affixed to the front of the body of the vehicle and the other to the rear, and both plates must be clearly visible from the front and rear of the vehicle,"[18] Title 20 V.I.C. § 334(a). In this instance, Asad and Peterson's counsel did not dispute that Asad's vehicle did not have the registration sticker or the front license plate affixed; instead, they argued that (i) the Court should take judicial notice as to the Bureau of Motor Vehicle's delay in issuing tags and practice of allowing vehicles to drive without tags and registrations in August 2021 due to the COVID-19 pandemic and (ii) the parking lot of Napoleon's Pizza is not a public road and therefore, there were no traffic violations since the statutes requiring registration sticker and license plates are only applicable to vehicles operating on the public road.

---

[18] Title 20 V.I.C. § 334(b) provides that "[f]or motorcycles, mopeds, bicycles, trailers, backhoes, forklifts, rollers, and cranes, one plate shall be issued which shall be carried in a position clearly visible from the rear. Each vehicle shall be required to carry a license plate." Title 20 V.I.C. § 334(b). In this instance, the vehicle driven by Asad was not a motorcycle, moped, bicycle, trailer, backhoe, forklift, roller, or crane. As such, the vehicle driven by Asad is not the type of vehicle in which only one plate was issued. *See* Id.

*People of the V.I. v. Asad, People of the V.I. v. Peterson*
SX-2021-CR-198, SX-2021-CR-199
**Memorandum Opinion and Order**
Page 18 of 21

2023 VI SUPER 37U

¶ 22 The Court must point out that Asad's counsel failed to provide any source for the information they want to be judicially noticed—to wit, "that the Bureau of Motor Vehicles was closed during the period of August 2021 due to the pandemic, and motorist were permitted to drive without tags during this period, as long as they got their vehicles inspected [and that] [a]fter inspection, motorists were to wait to be called to pick up their tags and registrations at much later dates, which could be months." *See* V.I. R. E. 201(b)-(c) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. The court: (1) may take judicial notice on its own; or (2) must take judicial notice if a party requests it and the court is supplied with the necessary information."). In turn, this means that the People were not given the opportunity to challenge the source of the information. At this time, the Court declines to take judicial notice of the fact suggested by Asad's counsel. Even assuming *arguendo* that the Court takes judicial notice of the fact suggested by Asad's counsel, the officers were still justified to initiate the traffic stop of Asad's vehicle to investigate traffic violations since Asad's vehicle did not have the registration sticker or the front license plate affixed. *See Rodriguez*, 575 U.S. at 354. Asad's counsel's argument that if the Court took judicial notice of the fact he suggested then the officers would not be justified to initiate a traffic stop of Asad' vehicle was based on the incorrect assumption that all vehicles missing the registration sticker or the front license plate around August 2021 were due to the Bureau of Motor Vehicles' delay; in reality, there may be other reasons why a vehicle was missing the registration sticker or the front license plate around August 2021—for example, the vehicle was never registered in the first place.

*People of the V.I. v. Asad, People of the V.I. v. Peterson*
SX-2021-CR-198, SX-2021-CR-199
**Memorandum Opinion and Order**
Page 19 of 21

2023 VI SUPER 37U

¶ 23    As to the defense counsel's argument that there were no traffic violations since the initial stop occurred on private property—to wit, the parking lot of Napoleon's Pizza—the Court finds it unpersuasive. Under Title 20 V.I.C. § 101, the parking lot of Napoleon's Pizza, which is a parking area that is open for use by the public, is a "public road or highway." *See* Title 20 V.I.C. § 101 ("public road or highway" includes all roads, highway and parking areas open for use by the public"). Thus, by not having the registration sticker and the front license plate affixed to his vehicle in the parking lot of Napoleon's Pizza, Asad committed traffic violations and the traffic stop to investigate the violations was lawful. *See Rodriguez*, 575 U.S. at 354.

### 2.  Plain View Doctrine

¶ 24    The plain view doctrine is a well-established exception to the warrant requirement. *Gumbs v. People of the V.I.*, 64 V.I. 491, 508 (V.I. 2016). In *Gumbs*, the Virgin Islands Supreme Court noted that under the plain view doctrine, an officer may "make a warrantless seizure of any item that he or she has viewed from a place or position in which he or she was lawfully entitled to be, provided it is immediately apparent that the item observed is evidence of a crime, contraband, or otherwise subject to seizure." 64 V.I. 491, 508-09 (V.I. 2016) (citing *Thomas v. People*, 63 V.I. 595, 606 n.4 (citing *Texas v. Brown*, 460 U.S. 730, 741 (1983))). The United States Supreme Court explained that "[i]f, while conducting a legitimate *Terry* search … the officer should, as here, discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances." *Gumbs*, 64 V.I. at 509 (quoting *Minnesota v. Dickerson*, 508 U.S. 366 (1993) (quoting *Michigan v. Long*, 463 U.S. 1032, 1050 (1983) and citing *Sibron v. New York*, 392 U.S. 40, 69-70, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968) (White, J. concurring))).

*People of the V.I. v. Asad, People of the V.I. v. Peterson*
SX-2021-CR-198, SX-2021-CR-199
**Memorandum Opinion and Order**
Page 20 of 21

2023 VI SUPER 37M

### A. Analysis

¶ 25    Through the affidavit and testimony of Officer Walters, the People established: (i) during the traffic stop, Officer Walters was standing by the driver side of the vehicle, (ii) during the traffic stop, other officers, including Officer Richards, were standing by the passenger side of the vehicle, and (iii) Officer Richards observed what appeared to be the handle of a gun with an extended magazine protruding from an open brown in color backpack-style bag that was located on the floorboard of the vehicle.

¶ 26    In this instance, Asad and Peterson's counsel did not raise any arguments as to the circumstances surrounding Peterson's act of attempting to exit the vehicle. Thus, the Court construes that the defense counsel do not dispute the lawfulness of the circumstances surrounding Peterson's act of attempting to exit of the vehicle. Since the Court finds that the traffic stop was lawful and the defense counsel did not dispute the lawfulness of the circumstances surrounding Peterson's act of attempting to exist the vehicle, the Court finds that the officers were lawfully entitled to be standing by the passenger side of the vehicle. *Gumbs*, 64 V.I. at 508-9. However, as noted above, the officer that initially observed in plain view the item that appeared to be a firearm did not testify at the suppression hearing since this issue was raised for the first time at the suppression hearing. Thus, the Court cannot determine whether "it [wa]s immediately apparent that the item observed is evidence of a crime, contraband, or otherwise subject to seizure." *Id.* At this juncture, the Court will schedule a second suppression hearing to address this issue.[19] Given that the plain view doctrine is an exception to the warrant requirement, the Court cannot address

---

[19] Conserving precious and limited judicial resources is another reason why it is important for the defense counsel to properly brief all the issues they intended to raise in their motions to suppress. Proper briefing would have eliminated this piecemeal hearing process.

*People of the V.I. v. Asad, People of the V.I. v. Peterson*
SX-2021-CR-198, SX-2021-CR-199
**Memorandum Opinion and Order**
Page 21 of 21

2023 VI SUPER 37U

the defendants' argument as to lawfulness of this warrantless search until after the Court determines whether the plain view doctrine is applicable here.

### 3. Lack of In-Court Identifications

¶ 27    The Court will also allow the People to address this issue at the second suppression hearing.

## CONCLUSION

¶ 28    Based on the foregoing, the Court will schedule a second suppression hearing and will reserve ruling on the defendants' motions to suppress. Accordingly, it is hereby:

**ORDERED** that a suppression hearing shall be scheduled on July 26, 2023, at 11:00 a.m. in Courtroom 206. It is further:

**ORDERED** that all witnesses shall appear personally. **And** it is further:

**ORDERED** that the suppression hearing is limited to the following two issues: (i) whether "it [wa]s immediately apparent that the item observed is evidence of a crime, contraband, or otherwise subject to seizure" and (ii) lack of in-court identifications. Parties are not permitted to raise any additional issues without leave of the Court.

**DONE and so ORDERED this** 10th **day of July, 2023.**

**ATTEST:**
Tamara Charles
Clerk of the Court

By: _____
Court Clerk Supervisor
Dated: 7/10/2023

_____
HAROLD W.L. WILLOCKS
**Administrative Judge of the Superior Court**

**FILED**
July 10, 2023 04:58 PM
SX-2021-CR-00199
TAMARA CHARLES
CLERK OF THE COURT

# IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## District of St. Croix

| | |
|---|---|
| **People of the Virgin Islands v. Fade Asad & Darnley Peterson** | Case Number: **SX-2021-CR-00198 & SX-2021-CR-00199**<br>Charges: **14 V.I.C. 2253(a) - Possession of An Unlicense Firearm**<br>**14 V.I.C. 2256(a) - Possession Or Sale Of Ammunition** |

## NOTICE of ENTRY
## of
## <u>Memorandum Opinion and Order</u>

**To:** Jared William Burke, Esq.          Martial A. Webster, Sr., Esq.

Amie M. Simpson, Esq.                Ronald E. Russell, Esq.

**Please take notice that on July 10, 2023**
**a(n)**          **Memorandum Opinion and Order**
**dated          July 10, 2023          was/were entered**
**by the Clerk in the above-titled matter.**

**Dated:** **July 10, 2023**                                        **Tamara Charles**

                                                          **Clerk of the Court**

                                        By:



                                              **Janeen Maranda**
                                              **Court Clerk II**